# THE MEAD LAW FIRM, P.C.

---

20-77 STEINWAY STREET, SUITE SL, ASTORIA, NEW YORK 11105 TEL: (866) 306-5547
Alt Tel: (718) 306-2107 / Fax: (866) 306-0337 wmeadlaw@gmail.com

January 17, 2021

<u>VIA ECF</u>
Honorable LaShann DeArcy Hall, U.S.D.J.
United States District Court
Eastern District Court of New York
225 Cadman Plaza East
Brooklyn, New York 11201

*Re: **GEICO v. Reliable CPM Surgical Supply Inc., et al.** EDNY 20cv05475-LDH-RML (RICO); Pre-motion Conference Letter (Dismissal Fed. R. Civ. P. 12(b)(6))*

Dear Judge DeArcy Hall:

      This firm represents Defendants, Reliable CPM Surgical Supply Inc, Vadim Solomonov, Oleg Dadashev in the above-referenced action. These defendants, referred to as the "Reliable CPM defendants" for purposes of this motion, respectfully present this pre-motion conference letter in accordance with the Court's individual rules, seeking permission to move to dismiss Plaintiff's action pursuant to Fed. R. Civ. P. §12(b)(6). The Complaint contains causes of action for declaratory judgment, 28 U.S.C. §2201 and §2202 (C.O.A. 1, ¶269-275); substantive R.I.C.O. 18 U.S.C. §1962(c) (C.O.A. 2, ¶276-282); R.I.C.O. conspiracy 18 U.S.C. §1962(d) (C.O.A. 3, ¶283-289); common law fraud (C.O.A. 4, ¶290-296); unjust enrichment (C.O.A. 5, ¶297-302); aiding and abetting fraud (C.O.A. 5, ¶303-311).

## <u>Fed. R. Civ. P. §12(b)(6) Standard – Plausibility</u>

      The court's function on a Rule §12(b)(6) motion is to determine whether the complaint itself is legally sufficient. *FragranceNet.com. Inc. v. Fragrancex.com. Inc.*, 679 F. Supp. 2d 312, 324 (E.D.N.Y. 2010) (internal quotations and citations omitted). In order for a complaint's allegations to be sufficient, it must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Determining whether a complaint states a plausible claim is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (quoting *Iqbal*, 556 U.S. at 679). Thus, plausibility "depends on a host of considerations: the full factual picture presented by the complaint, the particular cause of action and its elements, and the existence of alternative explanations so obvious that they render [the] plaintiff's inferences unreasonable." *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 430 (2d Cir. 2011).

## GEICO's Implausible Theory

The complaint is premised and hinges entirely upon a wholly implausible theory that claimants in order to perpetuate a fraud upon GEICO, and benefit various medical providers, put themselves at risk and "**underwent post-accident surgery.**" *See* Complaint, Dkt. 1, p. 2 of 73, ¶3, bold, underline supplied. And equally as implausible, that surgeons, put their patients under the knife, and performed "surgeries" in order for the doctors to later issue prescriptions for allegedly fraudulent equipment, to benefit others. *See* Complaint, Dkt. 1, ¶18-20. GEICO's theory that surgeons would risk their patients' lives, and their own medical licenses in order to perform an invasive "arthroscopic procedure on the Insureds" (*See* Complaint, Dkt. 1, ¶70, bold, underline supplied) in order to later "prescribe medically unnecessary Fraudulent Equipment" (*See* Complaint, Dkt. 1, ¶70) defies commonsense. Unwittingly, in the same Complaint, GEICO concedes the efficacy of the purported 'fraudulent equipment" by acknowledging that "[a] CPM is a machine that provides joint movement without active contraction of muscle groups, with the goal of increasing range of motion and promotion healing of joint surfaces." (*See* Complaint, Dkt. 1, ¶131, underline supplied).

GEICO's theory for all causes of action, at its core, depends on a form of self-harm[1] *en masse*, which is simply implausible, and defies human experience, and also runs contrary to the Hippocratic oath to do no harm, and well-accepted duties of physicians to diagnose and treat a patient's illness. See generally; *Wilson v. Bodian*, 130 AD 2d 221, 231 (2nd Dept. 1987). The bold suggestion by GEICO, that physicians would defy their oath and their basic duties to diagnose and treat by performing unnecessary surgeries, risk malpractice claims, discipline, and further that claimants (insureds) would participate by subjecting themselves to the risks of allegedly unnecessary invasive surgery simply as part of a fraudulent scheme against GEICO, to potentially benefit others, runs contrary to logic and commonsense. This implausible theme pervades GEICO's entire action. Even the conclusory alleged "unlawful financial arrangement" relies upon the surgery theory. (*See e.g.*, Complaint ¶87). As well as GEICO's contention that "predetermined fraudulent treatment protocols" exist in that an "orthopedic surgeon would then perform a relatively minor surgical procedure on one or more of the Insured's extremities such as an arthroscopic procedure" (*see* Complaint ¶118, underline supplied).

Further, it is illogical that the Reliable CPM would attempt to perpetuate a fraud by submitting "duplicative prescriptions" with "the same unique prescription identification number" (see Complaint ¶217-218) which would reveal rather than conceal issues with the prescriptions. See *Wolman v. Catholic Health System of Long Island*, No. 10-CV-1326 (JS)(ETB) (E.D.N.Y. Dec. 30., 2010) "Plaintiffs allegations that the pay stubs furthered the supposed scheme are not just implausible, they are illogical." Id.

---

[1] For a similar reason other legal presumptions against self-harm exist, *Schelberger v. Eastern Sav. Bank*, 93 34*34 A.D.2d 188, 190, 461 N.Y.S.2d 785 [(1983)], affd. 60 N.Y.2d 506, 470 N.Y.S.2d 548, 458 N.E.2d 1225 (1983), "[t]he presumption arises in recognition of the fact that self-destruction 'is contrary to the general conduct of [hu]mankind'" *Schelberger*, 93 A.D.2d at 192, 461 N.Y.S.2d 785 (underline supplied).

## **GEICO's RICO Claims Rely On The Same Implausible Theory**

To establish a **RICO** violation under 18 U.S.C. § 1962(c), a plaintiff must show: (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity (5) causing injury to the plaintiff's business or property. 18 U.S.C. §§ 1964(c), 1962(c). *Sedima, S.P.R.L. v.Imrex Co.*, 473 U.S. 479, 496, 105 S.Ct. 3275, 3284-85, 87 L.Ed.2d 346 (1985); see also *DeFalco v. Bernas*, 244 F.3d 286, 306 (2nd Cir. 2001). Since the civil RICO statute is amo$^2$ng "the most misused" of all federal statutes, *Goldfine v. Sichenzia*, 118 F. Supp. 2d 392, 394 (S.D.N.Y. 2000) (citation and internal quotation omitted), "courts should strive to flush out frivolous RICO allegations at an early stage of the litigation." *Tuscano v. Tuscano*, 403 F. Supp. 2d 214, 226 (E.D.N.Y. 2005) (citation and internal quotations omitted). *See also Mathon v. Marine Midland Bank, N.A.*, 875 F. Supp. 986, 1001 (E.D.N.Y. 1995) (warning that RICO allegations "must be reviewed with appreciation of the extreme sanctions [RICO] provides, so that actions traditionally brought in state courts do not gain access to treble damages and attorneys fees in federal court simply because they are cast in terms of RICO violations").

GEICO's RICO allegations are facially and factually deficient under the above standards and should be dismissed as all aspects of GEICO's case depends on the same implausible theory described above. Moreover, in RICO cases for which fraud is a predicate act, Fed. R. Civ. P. §9(b) requires that the fraud allegations be stated with particularity. *See, e.g., Moore v. Paine Webber, Inc.*, 189 F.3d 169, 172–73 (2d Cir. 1999) (stating that, in the RICO context, Fed. R. Civ. P. §9(b) calls for the complaint to specify the statements it claims were false and misleading, give particulars as to the respect in which plaintiffs contend the statements were fraudulent, state when and where the statements were made, and identify those responsible for the statements). Rule §9(b) also requires a plaintiff to plead facts giving rise to a "strong inference" of intent. *See First Capital Asset Mgmt., Inc. v. Satinwood, Inc.*, 385 F.3d 159, 178-179 (2d Cir. 2004). GEICO's complaint in the context of Rule 9(b) utterly fails in this regard. Although the complaint is framed around a superficial theory that claimants, were undergoing surgeries, as part of a purported fraud, without even a passing reference from a claimant that any surgery was undertaken in any manner other than as needed according to a claimant's injuries. In fact, <u>GEICO goes out of its way to not reference the injuries associated with the claimants and their consequent surgeries</u>. (*See e.g.,* Complaint ¶163, 190).

---

[22] Defendants also claim that GEICO's common law fraud; aiding and abetting, unjust enrichment, and declaratory judgment claims fail for similar reasons. For example, GEICO does not indicate in any plausible manner that the claimants' injuries did not meet the requirements for surgery or the post-surgical devices, no mention of with specificity is provided in the Complaint of the injuries of claimants at all, much less an analysis that GEICO's verification procedures concluded that the surgeries (and the resulting claims) constituted material misrepresentations or omissions of fact. GEICO's RICO conspiracy claim fails as the substantive RICO claim fails, and there is no indication of a conspiratorial agreement to violate RICO. See *Discon v. NYNEX Corp.*, 93 F. 3d 1055, 1064 (2d Cir. 1996)(vacated on other grounds) 525 U.S. 128 (1998). A more detailed analysis of these claims in the R. 12(b)(6) motion is intended but is not possible here due to page limitations.

Respectfully submitted,

___/s/_____
Wesley Mead, Esq.

cc: *All Counsel of record via ECF*